IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 6, 2013

IN RE: JAMONTEZ S., TIMOTHY S., JANIYA S., MONTIQUE S., ANN'DREONA
S. K., AND SHACARIAH S. K.[1]

**Appeal from the Juvenile Court for Davidson County**
**No. 160432      Sophia Crawford, Judge**

**No. M2013-00796-COA-R3-PT - Filed September 17, 2013**

Mother of six children appeals termination of her parental rights, contending that the
evidence does not support the court's holding that she abandoned the children within the
meaning of the applicable statute, that she failed to comply with the requirements of
permanency plans, that the conditions which led to the removal of the children from her
custody persisted, and that termination of her parental rights was in the children's best
interest.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL,
P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

C. Michael Cardwell, Nashville, Tennessee, for the appellant, Shamar S.

Robert E. Cooper, Jr., Attorney General and Reporter, and Leslie Curry, Assistant Attorney
General, for the Tennessee Department of Children's Services.

**OPINION**

Shamar S. ("Mother") is the mother of six children who are the subjects of this
proceeding: Jamontez S. (born 7/25/99) and Timothy S. (born 4/2/02) ("the boys"), who
came into the custody of the Tennessee Department of Children's Services ("DCS") on
March 30, 2011; and Janiya S. (born 8/5/04), Montique S. (born 8/20/05), Ann'dreona S. K.
(born 2/9/08), and Shacaria S. K. (born 5/14/09) ("the girls"), who came into DCS custody

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by
initializing the last names of the parties.

on December 20, 2010. A hearing was held in Davidson County Juvenile Court on July 25, 2011 on DCS' petition to have the children declared dependent and neglected. At the hearing, Mother stipulated to certain allegations of the petition, the court heard from CASA and counsel for the parties, and ruled:

> [A]ll six minor children are dependent and neglected within the meaning of Tennessee Code Annotated § 37-1-102(b)(12)(B), (F), and (G - neglect only) in that their mother, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for them; that they are under such condition of want and suffering and under such improper guardianship or control as to endanger their morals or health; and that they are suffering from neglect.

The court ordered that the children remain in DCS custody and that Mother continue to comply with the permanency plan in an attempt to reunify with the children.[2] The children have remained continuously in foster care.

Permanency plans were developed for the girls on January 18, 2011, and for both the boys and the girls on April 14, 2011 and March 19, 2012. The three plans required in large part the same things of Mother: she would undergo random drug screens and if she tested

---

[2] The court made the following findings of fact:

> The Court finds that, at the time the petition at bar was filed and the children were removed, their clothes were filthy, that they complained of not having enough food, that the electricity was cut off or about to be cut off due to nonpayment of the utility bill, that teachers and one family member expressed concern for the children, that the children reported being left at home alone, that older children had to care for the younger ones, and that the mother failed to ensure that the dental needs of the children were met and that their education needs were met.

> Further, the children consistently came to school hungry, with poor hygiene, and unkempt. At times, they were extremely tired. One child reported that he or she was made to stay up all night cleaning the house. Homework was not done, the mother rarely responded to notes sent home, and she had an unconcerned attitude when she was asked about her children.

> Another female, who has a history of assaultive behavior, was living in the mother's home, and a non-relative male was found sleeping in the home. The children reported that they were made to call the male "Daddy". It was previously reported by the mother that she and the children were the only people living in the home. No car seats were available for the transportation of the children. Roaches were observed crawling up the walls of the home, and trash was on the floor. At the time of removal, the children were dirty and smelled bad. Their clothes smelled bad and appeared dirty and tattered.

positive, would enroll in an alcohol and drug program; she would provide car seats for girls and assist in getting the children to their appointments; she would explore participating in the TennCare program; she would get Ann'Dreona on the wait list for Head Start and Montique tutoring; she would provide a safe, stable, and loving home environment; her home would be clean and free of clutter and she would not allow anyone to live in the home who is not on the lease; she would provide DCS a copy of the lease and would be able to pay her utility bills and provide DCS proof that rent and utility bills were paid each month; she would participate in individual and family counseling; she would remain in contact with DCS and be involved in the children's medical care; she would not allow anyone involved in drugs or illegal activity in her home or around the children; she would enroll in a GED program; she would maintain a stable phone number and address and notify DCS within 24 hours if she changed her phone number or address; that she would have a parenting assessment and follow all recommendations from the assessment; and that she would keep informed of the children's progress in school.

On June 12, 2012, DCS filed a petition to terminate Mother's parental rights on the grounds of wilful abandonment, substantial non-compliance with permanency plans, and persistence of conditions; DCS asserted that termination would be in the childrens' best interest.[3] A hearing was held on December 10, and on February 19, 2013, the court entered an order terminating Mother's rights on the following grounds:

> [T]hat [Mother] has willfully abandoned the minor children, Jamontez S., Timothy S., Janiya S., Montique S., Ann'dreona S. K., and Shacaria S. K., for more than four (4) consecutive months prior to the filing of this Petition; that her visits with the children have been token visitations as defined by Tenn. Code Ann. § 36-1-102(1)(C); that for the four (4) months following removal the Department has made reasonable efforts to assist the parent in establishing a suitable home for the children, but the parent has made no reasonable effort to provide a suitable home and has demonstrated a lack of concern for the children to such a degree that it appears unlikely that she will be able to provide a suitable home at an early date; that she has been substantially non-compliant with the statement of responsibilities in the permanency plans; that the children have been removed from the custody of the parent more than six (6) months; that the conditions that led to the children's removal still exist or other conditions exist which would in all probability subject the children to

---

[3] The petition also sought to terminate the parental rights of the four fathers of the children. The father of one child voluntarily surrendered his rights prior to the hearing and the father of two of the children surrendered his rights during the hearing; the parental rights of the remaining fathers were terminated in the final decree. None of the fathers' rights are at issue in this appeal.

further neglect or abuse if returned home; there is little likelihood that these conditions will be remedied at an early date so that the children could be returned to the Respondent in the near future; that the continuation of the parent/child relationship greatly diminishes the children's chances of early integration into a stable and permanent home.

Mother appeals, raising the following issues:

I.     Whether the trial court erred when it found by "clear and convincing evidence" that Shamar S. abandoned her children by willfully failing to pay child support and willfully failing to visit her children in the four (4) months prior to the filing of the petition pursuant to T.C.A. § 36-1-113(g)(1) and T.C.A. § 36-1-102(1)(A)(i)?

II.    Whether the trial court erred when it found by "clear and convincing evidence" that Shamar S. failed to make reasonable efforts within four (4) months after her children were placed in DCS custody to provide a suitable home and that she demonstrated a lack of concern for the children to such a degree that it appears unlikely the parent will be able to provide a suitable home for the children at an early date pursuant to T.C.A. § 36-1-113(g)(1) and T.C.A. § 36-1-102(1)(A)(ii)?

III.   Whether the trial court erred when it found by "clear and convincing evidence" that Shamar S. failed to comply with the reasonable responsibilities of the permanency plan pursuant to T.C.A. § 36-1-113(g)(2)?

IV.    Whether the trial court erred when it found by "clear and convincing evidence" that the children have been removed from the parent's home for six (6) months and the conditions which led to the children's removal still persist and there is little likelihood that these conditions can be remedied at an early date pursuant to T.C.A. § 36-1-113(g)(3)?

V.     Whether the trial court erred when it found that termination of Shamar S.'s parental rights were in the best interests of the children?

**DISCUSSION**

**I. Standard of Review**

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007), *cert. den.*, 168 L.Ed.2d 729 (2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982); *State Dep't of Children's Services v. C.H.K.* 154 S.W3d 586, 589 (Tenn. Ct. App. 2004).

Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger and of severing forever all legal rights and obligations of the parent and of the child; and the parent shall have no right thereafter to have any relationship, legal or otherwise, with the child. Tenn. Code Ann. § 36-1-113(*l*)(1). The United States Supreme Court has recognized the unique nature of proceedings to terminate parental rights, stating that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, (1996) (quoting *Santosky,* 455 U.S. at 787, (Rehnquist, J., dissenting)).

The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "This heightened standard . . . serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A.*, 980 S.W.2d at 622.

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## II. ABANDONMENT

Mother contends that the evidence does not clearly and convincingly show that she abandoned the children within the meaning of Tenn. Code Ann. § 36-1-113(g)(1), which designates "abandonment," as defined in Tenn. Code Ann. § 36-1-102, as a ground for terminating parental rights. Tenn. Code Ann. § 36-1-102(1)(A) defines "abandonment" in part pertinent to this appeal as follows:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of

concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department.

Tenn. Code Ann. § 36-1-102(1)(A)(i)-(ii).

In order to find "abandonment" by failing to render support, the court must determine that the failure is "willful". *See In Re Swanson,* 2 S.W.3d 180, 184-85 (Tenn. 1999). Failure to pay support under the termination statutes is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *State of Tenn., Dep't. of Children's Serv. v. Calabretta*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (citing *In re Adoption of Muir,* 2003 WL 22794524 (Tenn. Ct. App. Nov. 25, 2003)). In like fashion, to constitute a willful failure to visit, the parent must be aware of the duty to visit, have the capacity to visit, make no attempt to visit and have no justifiable excuse for not visiting. *See In Re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

Mother testified that she was under an order to pay $925 per month in support but that, other than the funds DCS received from the intercept of a 2009 income tax refund from her employment as manager of a Kentucky Fried Chicken restaurant, she had not paid support. She testified further that she had "no idea" and "[didn't] know" why she was not paying support, but that she was receiving monetary support from her mother, with whom she lived; there was no testimony or other evidence as to why she was not employed during the four months preceding the filing of the petition, while the children were in the custody of DCS.[4] This testimony shows that Mother had the capacity to work and was getting some financial assistance but was not paying support for her children; it is sufficient to show that Mother's failure to pay support was wilful.

With respect to Mother's visitation with the children, Ms. Angela Lemmond, DCS case manager, testified that Mother typically had therapeutic visits of eight hours per month, that she had visited the children nine or ten times since March of 2011 to the date of the hearing, and twice in the four months preceding the June 12, 2012 filing of the petition. When Mother was asked why she did not visit with the children more, she did not give any specific reasons for her failure, rather, she gave defensive, rambling testimony alluding to

---

[4] The trial court found that Mother "is able bodied and capable of working and supporting the children" and that she "has provided no justifiable excuse for failing to support the children."

problems with her various telephone numbers; she acknowledged that she did not complain to Ms. Lemmond, her lawyer, or the court regarding not getting visits with the children. The court found that Mother's two visits in the four months preceding the filing of the petition was token visitation within the meaning of Tenn. Code Ann. §36-1-102(1)(C).[5]

Whether visitation is "token" under this definition is a fact-intensive inquiry to be decided on a case-by-case basis. *In re Keri C.*, 384 S.W.3d 731, 748 (Tenn. Ct. App. 2010)(citing *In re M.T.,* No. W2002-03050-COA-R3-CV, 2003 WL 22351012, at *4–*5) (Tenn. Ct. App. Oct. 14, 2003)). While the trial court was in a better position to judge Mother's credibility, we are struck by Mother's seemingly uncaring attitude which is reflected in her responses to questions; in large part she merely gave excuses for failure to visit the children and there is nothing in her testimony to show any remorse that she did not visit them more. Considering the record as a whole, and giving deference to the trial court's finding, the evidence shows that Mother's admitted failure to visit the children was willful and supports the court's finding that the two visits in the four months preceding the filing of the termination petition were token.

Ms. Claudia Humphreys, CASA advocate, testified at length with respect to the court's finding that Mother abandoned the children by failing to make reasonable efforts to provide a home for them after they were placed in DCS custody. Ms. Humphreys testified that she first visited Mother's home in March of 2011; because of conditions existing at that time, the children were removed and placed in DCS custody, leading to the July 25, 2011 determination that they were dependent and neglected.[6] Ms. Humphreys followed the children in their schooling and with their foster parents and, as a member of the team implementing the permanency plans, attempted to work with Mother. Her testimony relative to Mother's efforts concluded:

> I thought [Mother] would have gotten a job. As far as the job is concerned, she specifically told me that she did not need to work because she could live off Jamontez' check.

---

[5] Tenn. Code Ann. § 36-1-102(1)(C) provides:

For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child.

[6] At the time of the March visit, the boys had been returned to Mother's custody and the girls were in Mother's home under a ninety day trial home placement.

I told her that that was not acceptable, but she said that his check brought in enough money to live off of and she didn't need to have a job.

I took [Mother] to get her drug test done only to be met with the drama there –we lost the bus ticket. I loaned [Mother] $4 . . . to get back into town. Once again, the drug test wasn't done.

Her resistance in a CFTM meeting about when she was told of Dr. Berryman's recommendations to seek therapy she said there's nothing wrong with me why do I need therapy.

THE COURT: Has she appeared to even grasp what the conditions were?

THE WITNESS: No.

THE COURT: Or does she simply see it as my lights got cut off and my kids got removed.

THE WITNESS: She sees it as my lights got cut off and my kids got removed. And it's everyone else's fault, including my own for why her children aren't in her custody.

The evidence is clear and convincing that Mother abandoned the children as defined by Tenn. Code Ann. § 36-1-102(1)(A)(i)-(ii).

### III. SUBSTANTIAL NON-COMPLIANCE WITH PARENTING PLAN

Tennessee Code Annotated § 36-1-113(g)(2) authorizes termination of parental rights for failure to comply with a parenting plan as follows:

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

The standards for reviewing termination of parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) were discussed by the Tennessee Supreme Court in *In re Valentine*, 79 S.W. 3d 539 (Tenn. 2002). In conjunction with terminating a parent's rights on the ground of substantial noncompliance, the trial court must find that the requirements of the permanency plan that the parent allegedly did not satisfy are "reasonable and related to remedying the conditions which necessitate foster care placement." *In re Valentine,* 79 S.W.3d at 547 (quoting Tenn. Code Ann. § 37-2-403(a)(2)(C)). The issue of substantial noncompliance with the requirements of a permanency plan is a question of law; therefore, it is reviewed *de novo* with no presumption of correctness. *Id*. at 546.

Permanency Plans were signed by Mother on January 18, 2011, April 14, 2011, and March 10, 2012. Each plan listed requirements to be completed in order to move the children back in to the care of Mother. DCS provided information and assistance to help mother comply with the requirements, offering transportation and payment options for drug and alcohol testing and counseling; DCS also provided information and letters to help Mother locate housing and employment.

The record is replete with Mother's failures to comply with the plans, despite the assistance given to her. She missed several drug and alcohol screenings, did not obtain stable housing, did not pay child support or secure employment, had unpaid utility bills, missed counseling appointments, and did not notify DCS of changes of address and contact information. The record clearly and convincingly shows that her failures to comply with the requirements of the permanency plans were numerous and substantial.

## IV. PERSISTENCE OF CONDITIONS

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tenn. Code Ann. § 36-1-113(g)(3)(A) when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

A termination proceeding based on the persistence of conditions ground requires a finding by clear and convincing evidence of all three statutory factors. *In re Valentine*, 79 S.W.3d at 549.

-10-

Ms. Humphreys's testimony recounting her experience in working with Mother and the children is ample evidence that the conditions which led to the children's removal, specifically, Mother's neglect and inattention to them, persisted through the date of the hearing. Viewing the evidence as a whole, Mother has shown a lack of desire to correct her circumstances and there is no evidence to suggest that the resulting conditions will be remedied.

## V. BEST INTEREST

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[7] The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that

---

[7] The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court made extensive findings of fact not only as to the grounds for termination but as to the best interest factors set forth in the statute; the court held that termination was in the best interest of the children. The evidence clearly and convincingly supports the court's holding.

## VI. CONCLUSION

For the foregoing reasons, the judgment of the trial court terminating Mother's parental rights is affirmed.

_____
RICHARD H. DINKINS, JUDGE