IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 3, 2016


**IN RE MILLI L., ET AL.[1]**


**Appeal from the Juvenile Court for Knox County**
**No. 141623      Timothy E. Irwin, Judge**


_____


**No. E2015-00569-COA-R3-PT**
**FILED-JUNE 7, 2016**

_____


Mother appeals the termination of her parental rights, asserting that the evidence does not sustain the grounds of abandonment by failure to support and persistence of conditions as found by the court and does not support the finding that termination of Mother's rights was in the child's best interest. Finding that the record clearly and convincingly supports the grounds found by the court, as well as the finding that termination of Mother's rights is in the child's best interest, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Lori J. Walker, Knoxville, Tennessee, for the appellant, Brooke S.

Brennan Lenihan, Knoxville, Tennessee, for the appellee, Carol L.[2]

**OPINION**

Brooke S. ("Mother") appeals the order of the Knox County Juvenile Court entered September 8, 2015, terminating her parental rights to Milli L. The petition

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] By order of Supreme Court entered May 11, 2016, counsel for appellee was suspended from the practice of law; the brief of appellee was submitted prior to the suspension. By separate order we are instructing the Clerk to furnish a copy of this opinion to appellee as well as counsel.

seeking termination was filed on April 4, 2014 by Carol L., Milli's paternal grandmother, in whose physical and legal custody Milli had been placed as a result of a finding by the Campbell County Juvenile Court on March 17, 2011, that Milli, who was born in 2009, was dependent and neglected.

The petition to terminate Mother's parental rights alleged four grounds: (1) abandonment by failure to provide a suitable home, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii); persistence of conditions, Tenn. Code Ann. §§ 36-1-113(g)(3); abandonment by failure to visit, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i); and abandonment by failure to support, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). The petition also alleged that termination of Mother's rights was in the best interest of Milli, Tenn. Code Ann. §§ 36-1-113(i).[3] Counsel was appointed for Mother, and an answer duly filed. Trial on the petition was held on March 12, 2015, and an order entered on September 8, 2015, *nunc pro tunc* to March 15, terminating Mother's parental rights on the stated grounds of abandonment by failure to visit and to pay support, and upon the finding that termination was in Milli's best interest.[4] Mother appeals, stating the following issues:

> 1. Whether the trial court erred in finding by clear and convincing evidence, that the Mother had abandoned her children [sic] by her willful failure to visit the children [sic] during the four months immediately preceding the filing of the petition for termination as defined by Tennessee Code Annotated, § 36-1-102(1)(A)(i)?
>
> 2. Whether the trial court erred in finding by clear and convincing evidence that the Mother had demonstrated a persistence of conditions (or, conversely, a failure to remedy conditions that, in all reasonable probability, would cause the children [sic] to be subjected to further abuse or neglect) pursuant to Tenn. Code Ann. § 36-1-113(g)(3)?
>
> 3. Whether the trial court erred in finding by clear and convincing evidence, that termination of parental rights of the Mother was in the best interest of the children [sic] as defined by Tenn. Code Ann. § 36-1-113(i)?

## DISCUSSION

---

[3] Carol L. also sought to terminate the parental rights of Milli's father, Jeremy L.; on November 4, Jeremy L. voluntarily surrendered his rights and has not participated in these proceedings.

[4] As discussed herein, the September 8, 2015 Order, prepared by counsel for Carol L., differed from the oral ruling at the March hearing.

# I.   STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.*, 154 S.W3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

# II.   ANALYSIS

At the outset, we address the fact that the September 8, 2015 Order differed from the oral ruling at the March hearing.[5] Specifically, the court stated the following at the hearing with respect to the grounds for termination:

> I listened with great depth to the evidence in this matter, and it's a little bit of an unusual case. I will point out that it would have been a slam dunk had the current custodian amended her pleadings to include the recent severe abuse finding. That would have been a certain ground, more certain

---

[5] The reason for the delay in entering the final order does not appear in the record.

3

than the two that we're left with here.  Let's take those grounds in order.

Willful failure to visit.  No visits since August of 2013; is that right? Now, the time period I'm supposed to consider is the four months immediately preceding the filing of the petition, which was filed in April 2014.  I can double that time period and still wouldn't have any visits. . . .

As to persistence of conditions, there's certainly some good things that have happened here recently.  I'm very encouraged that you're on Vivitrol.  Perhaps it will save your relationship with your last child.[6] Somebody's evidently working with you and letting you visit.  You've got the potential to be an appropriate mother, you've got that potential.  And the Vivitrol will stop the cravings and keep you from getting high for another three months or however much longer you get to take it.  If they'll get you certified that you can take it more, you ought to.  I just wish you had done this, you know, instead of going and living in hotels, I wish you had gotten help at the outset.  Vivitrol is not a new thing. . . .  To me there's enough there to say that's clear and convincing, and that's certainly an element of persistence of conditions.

Not paying support.  I know there's no willfulness and it doesn't matter for that ground but it matters.  It matters as an element of persistence of conditions, it sure does. . . .

If you had been sober longer, I'd have an easier time of concluding that there were no persistence of conditions.  But when examined in the totality of the evidence, I can't make that conclusion.  I clear and convincingly find that those conditions which led to the removal still persist.

The court proceeded to discuss the best interest factors at Tenn. Code Ann. § 36-1-113(i) and hold that termination of Mother's parental rights was in Milli's best interest.

In the order entered September 8, however, after making findings of fact relative to circumstances which led to the dependent and neglect proceeding as well as findings of fact relative to the termination proceeding, the court terminated Mother's rights on the grounds of abandonment by failure to visit and failure to pay support.[7]  Mindful of the

---

[6] Mother had children in 2012 and 2014, neither of whom is a subject of these proceedings.

[7] Mother's counsel signed the order under the statement "PREPARED FOR ENTRY BY:"; however, the transcript of the hearing does not show that the court asked or instructed counsel to do so; the only statement by the court is "I want this order quickly."  As was explained in *Smith v. UHS of Lakeside, Inc.*, a case in which our Supreme Court was reviewing Findings of Fact and Conclusions of Law on a motion

instruction set forth by our Supreme Court that, "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal," we proceed to address the grounds for termination discussed both in the oral ruling as well as in the September 8, 2015 order. *In Re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016) (footnote omitted).

### A. Abandonment

Tenn. Code Ann. § 36-1-113(g)(1) designates abandonment, as defined at Tenn. Code Ann. § 36-1-102, as a ground for terminating parental rights. Tenn. Code Ann. § 36-1-102 (1)(A)(i) defines "abandonment" for this purpose as follows:[8]

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

### I. FAILURE TO VISIT

In addition to discussing Mother's behavior generally and events in her life which led to the dependent and neglected proceeding, the order contained two specific findings relative to the ground of failure to visit:

> 14. That the Respondent has willfully failed to visit with either minor child for a period of four (4) months immediately preceding the filing of this Petition. That the Respondent claimed to have been unable to do so, but by no fault of the Petitioner. That the respondent later admitted on cross-examination to being able to travel out-of-state to a beach vacation with her boyfriend rather than visiting with her children, and even posted about it vacation [sic] on social media sites. That any visitation the Respondent has

---

for summary judgment which had been prepared at the trial court's instruction by counsel for the prevailing party, a reviewing court must be assured that the written order "accurately reflect[s] the decision of the trial court" and "the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Smith*, 439 S.W.3d 303, 316 (Tenn. 2014).

[8] Effective July 10, 2014, the statute was amended to replace the words "parent(s) or guardian(s)" with "parent or parents or the guardian or guardians of the child." The change in wording does not affect our analysis.

had in the recent past has been token at best, and it appears to the Court that during the appropriate timeframe the Respondent is still using and abusing drugs rather than visiting her children.

15. That the Respondent has not consistently visited with the minor children, to the point that the minor children do not know who she is according to her own testimony. That the Respondent has failed to maintain appropriate or consistent or meaningful contact with the minor children, despite having the ability and opportunity to visit with the children, and the failure to visit is willful.

These findings were consistent with the oral ruling and both are supported by the testimony of Mother and Carol L.

Mother acknowledged several times during her testimony that she had not visited Milli since August of 2103, a time period well in excess of the four months immediately preceding the filing of the petition on April 4, 2014. Mother testified that she was in a treatment program for a portion of one of the four months and went to Florida with her boyfriend for two and a half weeks during another month; she gave no testimony upon which to conclude that her failure to visit Milli during that period was not willful. The finding that Mother failed to visit Milli in the four months preceding the filing of the petition, as stated by the court in the oral ruling and in the September 8, 2015 order, is supported by clear and convincing evidence.

## II.  FAILURE TO SUPPORT

In its oral ruling, the court stated that Mother's failure to pay support in the four months preceding the filing of the petition was not willful. The order included the following findings relative to this ground:

16. That the Respondent has willfully failed to provide support for the minor children for a period of four (4) months immediately preceding the filing of the Petition, and has paid virtually no support during the time the children have been in the Petitioner's custody. That the Respondent has failed to make any reasonable payment(s) toward the support of either child for a period of four (4) months immediately preceding the filing of the Petition.

17. That the Respondent has had the ability, capability, means and opportunity to either provide support and/or to make reasonable payments toward the support of either child, but has willfully chosen not to do so, despite the Respondent testifying that she has been employed at various places and been able to afford those things she deemed important, including

6

a beach vacation.

. . .

18. That the Respondent has willfully failed to provide support or to make reasonable payments toward the support of the minor children.

In neither the oral ruling nor the order did the court terminate Mother's rights on this ground, and we find that the ground is not supported by clear and convincing evidence. Specifically, while there was no dispute that Mother had not paid support, the testimony relative to whether the failure was willful was not clear and convincing.[9] Particularly, there was no clear testimony as to when and where Mother was employed during the period of December 2013 through April 2014. Abandonment by failure to support as a ground for termination as alleged in the petition was not shown by clear and convincing evidence.

### III. FAILURE TO PROVIDE A SUITABLE HOME

Tenn. Code Ann. § 36-1-102(1)(A)(ii) also defines abandonment to include where the child has been removed from the home as a result of a finding in a dependent and neglect proceeding and the parent fails to make reasonable efforts to provide a suitable home, despite the efforts of DCS or another agency to assist the parents.[10] In the case at

---

[9] In *In re Audrey S.*, , this Court explained willfulness in the context of termination cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . .
>
> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.
>
> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child.

182 S.W.3d 838, 863–64 (Tenn. Ct. App. 2005) (citations and footnotes omitted).

[10] Tenn. Code Ann. § 36-1-102 (1)(A)(ii) states:

bar, Milli was placed with Carol L., who filed the termination of parental rights petition, as a result of the dependent and neglect proceeding initiated by the Department of Children's Services. Mother and Carol L. were the only persons to testify at the trial of this case, and only a portion of the technical record from the dependent and neglect proceeding was introduced as an exhibit. While the court did not discuss the ground of abandonment by failing to provide a suitable home in its oral ruling, the September 8, 2015 order includes the following findings:

10. That the respondent is and has been unable to provide a suitable home for either minor child. That the Respondent has traveled in and out of State, failed to appear for Court proceedings, continues to maintain a relationship with a felonious out-of-state (at the time) boyfriend that she now blames all of her troubles and issues on, and chooses to go to the beach with him rather than establishing and maintaining a safe, suitable and appropriate home for the children.

11. That the Respondent's failure to make even minimal efforts to improve her respective home(s) and personal conditions demonstrates a significant and on-going lack of concern for the children to such a degree that it is unlikely that she will be able to provide a safe, suitable and/or appropriate home for either minor child at an early date. . . .

12. That the conditions that led to the removal of both children still exist in that the Respondent continues to abuse drugs and alcohol, and continues to be able to maintain a consistent, safe or suitable home. That the Respondent presented the Court with certificates of completion of various addiction, dependence and/or drug rehabilitation treatment programs, but

---

The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department.

8

then admitted on cross-examination that she was using drugs during all of those programs, despite being drug-tested. That the Respondent testified that she was currently "clean" at the time of the hearing, but admitted that she was only "clean" because she was taking a shot paid for by TennCare to prevent her from craving certain drugs, and admitted that she had used other drugs within a short time prior to the hearing, in addition to using during all of her attempts at treatment programs. That the Respondent has demonstrated that there is little chance those conditions will be remedied soon so that the children could be returned safely to the Respondent, and the Respondent has done little to nothing to remedy those conditions on a permanent or lasting basis.

These findings touch on the ground of abandonment by a failure to provide a suitable home but speak more to a best interest determination. To the extent these contain factual findings, they are supported by clear and convincing evidence, particularly Mother's own testimony. Because the court did not mention the failure to provide a suitable home in its oral ruling, however, we are not convinced that the fact that they were included in the order reflected the court's own deliberation and decision that termination should be granted on the ground of abandonment by failure to provide a suitable home within the meaning of Tenn. Code Ann. § 36-1-102(1)(A)(ii).

### B.      Persistence of Conditions

While persistence of conditions as a ground for termination was alleged in the petition, the court did not terminate Mother's rights on that ground; neither did the court deny termination on that ground. On appeal, Mother argues that the ground was not proven by clear and convincing evidence and that "the court erred when it found this ground."

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tenn. Code Ann. § 36-1-113(g)(3) when:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

To terminate parental rights on the ground of persistence of conditions requires a finding by clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 549.

In the oral ruling the court found that the conditions which led to Milli's removal persisted. Findings in the order which relate to persistence of conditions, in addition to findings 10, 11 and 12, quoted above, were:

8. That the Campbell County Juvenile Court adjudicated the child Milli dependent and neglected on March 17, 2011 (after a probable cause finding on September 30, 2010). That Milli has been in the physical and legal custody of Petitioner since September 3, 2010. That the Respondent had significant drug and alcohol issues that were unresolved, amongst other issues, including but not limited to: housing, transportation, and an ability to legally support the child(ren). That since that time the child Milli has remained in the legal and physical custody of the Petitioner. . . .

19. That the Respondent further admitted on cross-examination that she has since had a third drug-exposed child, and that drug-exposed child was found, by clear and convincing evidence, to have been dependent and neglected in her care and subject to severe abuse, and that an adjudication of dependency and neglect by severe abuse had been entered against her by another court in another jurisdiction, but no written order was available to the parties or this Court at the time of trial and the Respondent acknowledged same.

We agree with Mother, as did the trial court, that the evidence shows that Mother has taken recent steps to improve her life; we do not agree that the evidence shows a "documented period of sobriety," as she argues in her brief, or other changes such as to make the evidence showing persistence of conditions less than clear and convincing.

Milli was removed from Mother's custody by court order on September 3, 2010, and was adjudicated dependent and neglected on March 4, 2011. The record shows that Mother had another child in 2012, who is now in Carol L.'s custody, as well as a child in 2014, who is the subject of another dependent and neglect proceeding; that Mother completed a drug treatment program in February 2014, two months before the petition to terminate her rights was filed, and in January 2015, two months prior to the hearing; that Mother had leased a one bedroom apartment for herself and no children in July 2014 and,

at the time of trial, was planning to move.

While Mother argues that greater weight should be given to the fact that she completed the treatment program in January 2015, Mother testified that she continued to use drugs while in the treatment programs; significantly, the record supports the finding that Mother's sobriety is due to medication she is taking. Taken as a whole, the evidence does not show that, in the years that Milli has been removed from her custody, Mother has maintained the stability and consistency that clearly and convincingly leads to a conclusion that the conditions which led to the removal do not persist; the evidence of her lifestyle, instability, and lack of consistent employment lead to the contrary conclusion. The evidence is clear and convincing that the conditions which led to Milli's removal persist.

## C.     Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[11]

---

[11] The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe

The list of factors in the statute is not exhaustive, "and the statute does not require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006).

In the oral ruling the court found factors (1), (3), (4), (5) and (6) applicable to support the conclusion that termination of Mother's parental rights was in Milli's best interest. In the order terminating her rights, the court stated findings with respect to factors (1), (2), (3), (6) and (9) in support of the determination.

The court's findings, in both the ruling and the order, were supported by the testimony of Mother and Carol L., as well as the exhibits and record of the dependent and neglect proceeding. Taken as a whole, the record showed a pattern of drug use and abuse on Mother's part that led to instability which, in turn, caused her to neglect Milli. While, at the time of the hearing, Mother had begun to take steps to address some of these issues, she had not reached a point where the court had any assurance that her progress would continue. Carol L., in whose custody Milli had been for over four years at the time of the hearing, testified as to Milli's insecurities, speech impediment, anxiety reactions, and the therapy which she was receiving. With respect to both sets of factors, the record clearly and convincingly supports the court's finding that Mother had not made a lasting adjustment of circumstances within the meaning of Tenn. Code Ann. § 36-1-113(i)(1); had not regularly visited Milli or maintained contact with her, Tenn. Code Ann. § 36-1-113(i)(3); had not established a meaningful relationship with Milli, Tenn. Code Ann. § 36-1-113(i)(4); that Milli was in a safe and supportive environment which met her needs, Tenn. Code Ann. § 36-1-113(i)(5); that Mother had engaged in a pattern of neglect of her children, Tenn. Code Ann. § 36-1-113(i)(6); and that Mother had not paid child support during the time Milli was in Carol L.'s custody, Tenn. Code Ann. § 36-1-113(i)(9). The finding that termination of Mother's rights was in Milli's best interest is supported by clear and convincing evidence.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court terminating Mother's parental rights.

RICHARD H. DINKINS, JUDGE

and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.