IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 2, 2003 Session

## CHRISTY RENEE OSBORN v. JUSTIN CHANDLER MARR

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Williamson County**
**No. 28066     Russ Heldman, Judge**

---

**No. M2001-02890-SC-R11-CV - Filed January 23, 2004**

---

We granted this appeal to determine whether Tennessee Code Annotated section 36-1-113(g)(6), which provides for the termination of parental rights when a parent is imprisoned for at least ten years due to a criminal act and the child is under the age of eight when the sentence is imposed, also requires a showing of substantial harm to the child before a parent's rights may be terminated. Because we hold that a parent does not have standing to file a petition pursuant to Tennessee Code Annotated section 36-1-113(g)(6), we lack subject matter jurisdiction to hear the merits of the appeal. Accordingly, we dismiss this case and vacate the judgments of the lower courts.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Vacated; Case Dismissed**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Stacey M. Brackeen, Franklin, Tennessee, for the Appellant, Justin Chandler Marr.

Kenneth W. Rucker, Nolensville, Tennessee, for the Appellee, Christy Renee Osborn.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth C. Driver, Assistant Attorney General, for the intervenor, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

Christy Renee Obsorn ("Mother") and Justin Chandler Marr ("Father") are the parents of a son, Shon Austin Marr, born on September 10, 1998. The parties never married. Approximately five months after Shon was born, Father began serving a sixteen-year prison sentence. Father's

parents and Mother occasionally took Shon to visit Father in prison, but these visits eventually stopped.

In July 2001, Mother filed a petition to terminate Father's parental rights based upon Tennessee Code Annotated section 36-1-113(g)(6), which provides for the termination of parental rights when a parent is imprisoned for at least ten years due to a criminal act and the child is under the age of eight when the sentence is imposed. No other grounds for termination were alleged. No adoption was pending. Mother stated that she sought termination of Father's parental rights to become her son's sole provider and to share the same last name with her son.

The trial court found that Mother had established grounds for termination under Tennessee Code Annotated section 36-1-113(g)(6). Although the statute does not require a showing of substantial harm to the child before a parent's rights may be terminated, the trial court held that such a showing is constitutionally required pursuant to our decision in Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993), and subsequent cases. The trial court further held that the evidence of substantial harm was insufficient to grant the petition.

The Court of Appeals reversed. It held that where grounds for termination of parental rights are established under Tennessee Code Annotated section 36-1-113(g)(6), no separate finding of substantial harm to the child is constitutionally required. The intermediate court remanded the case to the trial court to determine whether termination was in Shon's best interests.

We granted permission to appeal. We directed that notice be given to the Office of the Attorney General because the constitutionality of Tennessee Code Annotated section 36-1-113(g)(6) was challenged. In response to this constitutional challenge, the State asserts that Mother lacks standing to seek the termination of Father's parental rights because Tennessee Code Annotated section 36-1-113(b) does not list the child's parent among the persons or entities who have standing to file a petition to terminate parental rights. We agree.

## II. Analysis

Before reaching the substantive issue presented for review, we must determine whether this Court has jurisdiction over the subject matter before it. See Tenn. R. App. P. 13(b). Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy. Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000). Tennessee's courts derive subject matter jurisdiction from the state constitution or from legislative acts. See id.; Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632, 639 (Tenn. 1996); Kane v. Kane, 547 S.W.2d 559, 560 (Tenn. 1977). Courts may not exercise jurisdictional powers that have not been conferred on them directly or by necessary implication. See First Am. Trust Co. v. Franklin-Murray Dev. Co., 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001); Dishmon v. Shelby State Cmty. Coll., 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

In Tennessee, a court may not terminate a parent's rights to his or her child(ren) unless there is specific statutory authority to do so. See Jones v. Garrett, 92 S.W.3d 835, 838 (Tenn. 2002)

(observing that "[t]he grounds for terminating parental rights in Tennessee are defined by statute"). Tennessee Code Annotated section 36-1-113(b) lists the parties who have standing to file a petition to terminate parental rights. At the time that Mother filed her petition to terminate Father's parental rights, Tennessee Code Annotated section 36-1-113(b) (2001) provided:

> The prospective adoptive parent(s) of the child, any licensed child-placing agency having custody of the child, the child's guardian ad litem, a court appointed special advocate (CASA) agency, or the department shall have standing to file a petition pursuant to this part or pursuant to title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of such child. The prospective adoptive parents shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.[1]

When a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite. See, e.g., Grom v. Burgoon, 672 A.2d 823, 824 (Pa. Super. Ct. 1996). Because the legislature specifically designated who may file a petition to terminate parental rights, a court does not have subject matter jurisdiction to hear such a petition unless the party filing the petition has standing. Standing, therefore, is a necessary prerequisite to the court's exercise of subject matter jurisdiction in termination of parental rights cases. Consequently, we must consider the issue of standing, even though it was not raised below by the parties. See Tenn. R. App. P. 13(b) (stating that "[t]he appellate court shall . . . consider whether the trial and appellate court have jurisdiction over the subject matter, *whether or not presented for review*") (emphasis added). Standing is a component of subject matter jurisdiction in this case, so it cannot be waived. See Meighan, 924 S.W.2d at 639.

Tennessee Code Annotated section 36-1-113(b) does not include the parent of a child as one of the persons or entities with standing to file a petition to terminate parental rights. This statute, which is part of Tennessee's adoption law, must be strictly construed because it is in derogation of the common law. See In re K.A.Y., 80 S.W.3d 19, 23 (Tenn. Ct. App. 2002). When construing a statute, this Court's role is "'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). Legislative intent is determined "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." State v. Flemming, 19 S.W.3d 195, 197 (Tenn.

---

[1] After the filing of Mother's petition, Tennessee Code Annotated section 36-1-113(b) was amended to include among the persons and entities with standing to file a termination of parental rights petition extended family members who are caring for related children and who want to adopt them. See Tenn. Code Ann. § 36-1-113(b) (Supp. 2003).

2000). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." Boarman v. Jaynes, 109 S.W.3d 286, 291 (Tenn. 2003).

Tennessee Code Annotated section 36-1-113(b) is clear and unambiguous. The statute omits the parent of a child as one of the persons or entities with standing to file a petition to terminate parental rights. The legislature's decision to omit a child's parent from those persons with standing to terminate parental rights is consistent with statutes governing other aspects of a parent-child relationship. A parent has the duty to financially support his or her children. See Tenn. Code Ann. § 34-1-102 (2001); Gallaher v. Elam, 104 S.W.3d 455, 461 (Tenn. 2003). When parental rights are terminated, all legal rights and obligations of the parent are severed, including the duty to provide support. See Tenn. Code Ann. § 36-1-113(l)(1) (2001). The termination of a parent's parental rights outside the context of a prospective adoption would deny the child the support of two parents.

Mother argues that despite the statute's failure to list parents among those with standing to file a petition to terminate parental rights, she nonetheless has standing to do so. Mother argues that she has a fundamental constitutional right to ensure her child's protection and well-being by filing a petition to terminate the parental rights of an unfit father. We disagree. We begin with the presumption that Tennessee Code Annotated section 36-1-113(b) is constitutional. See Gallaher, 104 S.W.3d at 459 (stating that "[i]n evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional"). Parents have a fundamental right to the care and custody of their children under both the United States and Tennessee Constitutions. See id. at 461; Hawk, 855 S.W.2d at 578. This parental right exists to provide privacy to care for children without unwarranted state intervention. See, e.g., Tenn. Baptist Children's Homes, Inc. v. Swanson (In re Swanson), 2 S.W.3d 180, 187 (Tenn. 1999). There is no corollary right for a parent to take all actions that a parent deems to be in the best interests of his or her child. See, e.g., Gallaher, 104 S.W.3d at 461 (holding that although parents have a fundamental right to the care and custody of their children, they have no fundamental right to allocate support to their children as they see fit). Therefore, the exclusion of the parents of a child from the list of those having standing to seek the termination of parental rights to that child does not impermissibly infringe upon the fundamental right of parents to the care and custody of their children.

Mother also argues that construing Tennessee Code Annotated section 36-1-113(b) to prevent a parent from filing a petition to terminate the parental rights of the other parent violates her right to equal protection. This contention is without merit. "The equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike." Id. Mother fails to demonstrate a class of similarly situated individuals who would be treated differently by a construction of the statute preventing her from filing a termination petition. Mother is similarly situated to Father because they are each a parent of Shon. The statute treats Mother and Father equally because it denies both of them standing to file a petition to terminate the parental rights of the other. Furthermore, a parent seeking to terminate the parental rights of the other parent outside the context of an adoption is not similarly situated to any of the groups listed as having standing to terminate parental rights under Tennessee Code Annotated section 36-1-113(b). For example, a legal parent is not similarly situated to a prospective adoptive parent because a legal parent is not seeking

to adopt his or her own child. In summary, Tennessee Code Annotated section 36-1-113(b) does not violate Mother's right to equal protection because it treats those who are similarly situated to her alike. Mother's further arguments are also without merit.

In conclusion, absent statutory authorization under Tennessee Code Annotated section 36-1-113(b), a party has no standing to file a petition to terminate parental rights. Based upon the exclusive list of persons and entities contained in Tennessee Code Annotated section 36-1-113(b), it is clear that Mother does not have standing to file a petition seeking to terminate Father's parental rights. She is not a member of any of the groups to whom the statute grants standing. Consequently, Mother is not a proper party to bring a petition to terminate Father's parental rights, and the trial court was therefore without subject matter jurisdiction to hear Mother's petition. "[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal." Dishmon, 15 S.W.3d at 480. Accordingly, we dismiss this case and vacate the judgments of the courts below. Thus, we do not reach the merits of whether a separate showing of substantial harm to the child is constitutionally required when grounds for termination exist under Tennessee Code Annotated section 36-1-113(g)(6).

## III. Conclusion

For the foregoing reasons, we dismiss Mother's petition and vacate the judgments of the lower courts. Costs of this appeal are taxed against the appellee, Christy Renee Osborn, and her surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

-5-