IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 13, 2012 Session

# IN RE: THE ADOPTION OF A MALE CHILD Z. J. D.

**Appeal from the Chancery Court for Cheatham County**
**No. 15152      George C. Sexton, Judge**

**No. M2012-01596-COA-R3-PT - Filed March 7, 2013**

Mother and Stepfather filed a petition to terminate Father's rights to his fourteen year old son to allow Stepfather to adopt the child. Mother and Stepfather asserted Father abandoned the child because his visits constitute nothing more than "token visitation." Father lives in Massachusetts and usually visits the child once a year. Father's most recent visit was one month before Mother and Stepfather filed their petition. The trial court denied the petition and we affirm the trial court's judgment. Father presented evidence that he has tried to communicate and visit more with the child but that Mother has thwarted his efforts. Based on the particular facts of this case we conclude Father has not abandoned the child by failing to visit, or engaging in "token visitation" as set forth in Tenn. Code Ann. § 36-1-102, in the four months preceding the filing of the petition for termination.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Lynn Newcomb, Ashland City, for the appellants, B.B. and E.B.

John Benneth Iwu, Antioch, Tennessee, for the appellee, G.D.

## OPINION

The biological mother, E.B. ("Mother"), and the biological father, G.D. ("Father"), were married to one another when Z.J.D. was born in Tennessee. Father moved to Massachusetts before the child was born and, other than one month when Mother lived with Father in Massachusetts, Mother has resided in Tennessee with the child throughout the child's life. Mother and Father were divorced when the child was about two years old, and Mother subsequently married E.B. ("Stepfather"), who is her current husband.

When the child was thirteen years old Mother joined Stepfather in filing a petition to terminate Father's rights to the child so that Stepfather could adopt the child.[1]  The petition cited as grounds for termination abandonment and failure to support.  Father filed an Answer denying that he had abandoned the child or failed to support him and asked the court to deny the petition to terminate his parental rights.

Father came down to visit the child approximately one month before Mother and Stepfather filed their petition.  Father spent a few hours with the child on Saturday and a few hours with the child on Sunday.[2]  Mother and Stepfather contended in their petition that Father exercised only "token visitation" with the child during this visit and that the court should therefore find Father "abandoned" the child, as that term is defined in Tennessee Codes Annotated section 36-1-102(1)(A)(i), by willfully failing to visit the child.

A trial was held during which Mother, Father, Stepfather, and the child all testified. The parties do not dispute that Father has lived in Massachusetts throughout the child's life and has come down to visit the child an average of once a year since the parties were divorced in early 2000, or about twelve times in all.[3]  Father is a factory worker and testified that he earns approximately $32,000 before taxes.  Father has family in Nigeria, and due to family illness and death he has traveled to Nigeria at different times over the last several years to visit and attend funerals of his immediate family.

Father testified that he loves his son and that due to the time he has had to take off work to travel to Nigeria, and due to the expense of traveling to Nigeria, he has not been able to visit the child in Tennessee as often as he would like.   Father also testified that Mother has made it difficult for him to communicate and visit with the child.  Father testified that he wanted to bring the child to Massachusetts several years ago to visit, but that Mother refused

---

[1]Mother has no standing to petition for the termination of Father's parental rights, Tenn. Code Ann. § 36-1-113(b), but she is a necessary party to the petition for adoption by Stepfather.  *See* Tenn. Code Ann. § 36-1-115(c) (spouse of individual seeking to adopt must sign adoption petition as co-petitioner even if spouse is biological parent of child sought to be adopted); *Osborn v. Marr*, 127 S.W.3d 737, 739-40 (Tenn. 2004) (one parent of child has no standing to petition court to terminate other parent's parental rights).

[2]Mother and Father's divorce decree is not included in the record, but evidence was introduced at trial that the divorce decree gave Father only supervised visitation with the child.  Therefore, Father's opportunities to visit with the child are dictated by Mother's schedule.

[3]There was evidence that in 2010 Father did not come down to visit the child at all, but Father explained that his mother was gravely ill that year, and he had to spend about a month visiting and taking care of her in Nigeria.  There was also evidence that Father came down to visit the child twice during another year.

to allow the child to go. Father then bought the child a cell phone when the child was nine or ten years old so that Father could have better communication with the child, but the child lost the phone soon after he got it. Father communicates with the child by phoning either Mother's cell phone or Mother's house phone, but Father testified that when he calls Mother refers to him as a "stranger" when she tells the child Father would like to speak with him.

Father testified that he offered to buy the child a laptop after the child told Father there was only one computer in Mother's house. Father testified that Mother refused Father's offer and told him the child did not need or want a laptop. Father voluntarily provides the child with dental and eye insurance in addition to the health insurance he is required to provide.

Mother testified that Father does not call the child often and that when he does call, he only speaks with the child for a minute or so. Mother testified that Father does not come down to visit the child often enough, and when he does come down to visit, Father upsets the child by commenting negatively on his appearance and speaking negatively about Mother and Stepfather.

The child testified that he does not feel comfortable with Father and that he wants to be adopted by Stepfather. Stepfather testified that he has a good relationship with the child and that he is interested in adopting the child.

## THE TRIAL COURT'S ORDER

The trial court stated in its Order that "[Father] has done nothing to show that he is a father" and that "the Court is of the opinion that it would be in [the child's] best interest to be adopted in this case." Nevertheless, the court denied the petition to terminate Father's parental rights because "By case law, the father exercised the parenting time he was allowed under the Court Order within four months of the filing of the petition."

Mother and Stepfather appeal the trial court's judgment denying the petition. They assert the trial court erred by failing to hold that Father has abandoned the child because Father's visitation within the four months prior to their filing of the petition was nothing more than "token visitation."

## ANALYSIS

Stepfather cannot adopt the child unless he can succeed in terminating Father's parental rights to the child. Tenn. Code Ann. § 36-1-120(a)(6)(C). Stepfather must prove two elements by clear and convincing evidence before a court will terminate Father's parental rights to the child. Tenn. Code Ann. § 36-1-113(c)(1). First, Stepfather must prove

one of the statutory grounds for termination set forth in Tennessee Code Annotated section 36-1-113(g). Second, Stepfather must show that termination of Father's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c)(2). *M.L.P.*, 281 S.W.3d at 392; *A.M.H.*, 215 S.W.3d at 808-09. The heightened standard of proof prevents unwarranted termination of a biological parent's parental rights. *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *see In re Keri C.*, 384 S.W.3d 731, 743 (Tenn. Ct. App. 2010) (higher standard of proof is required because of profound consequences flowing from decision to terminate parental rights).

"Abandonment" is one of the statutory grounds for terminating parental rights and is defined, in pertinent part, as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i).[4]

The statute clarifies that "[f]or purposes of this subdivision (1), 'willfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). "Token visitation" is defined as "visitation [that], under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(c). A parent's failure to visit must be willful, and when a parent's efforts to visit his or her child are thwarted by others, the failure to visit is not willful. *M.L.P.*, 281 S.W.3d at 392; *A.M.H.*, 215 S.W.3d at 810.

Whether a parent's visitation is "token" requires a fact-intensive inquiry to be determined on a case-by-case basis. *In re Keri C.*, 384 S.W.3d at 748. The evidence in this case shows that Father lives over one thousand miles away from the child and has a factory job that pays him by the hour. Living so far away on a limited income makes it difficult for Father to visit as often as he may like. Father has made efforts over the years to spend more time and have a more meaningful relationship with the child. Father has bought the child a

---

[4]Shortly after the start of the trial Mother and Stepfather struck the portion of their petition asserting Father had failed to support the child.

cell phone, he has offered to bring the child up to Massachusetts, and he has offered to buy the child a laptop. The child was unable to keep track of the phone, and Mother refused to allow the child to go to Massachusetts. Mother also refused Father's offer to buy the child a laptop.[5]

We affirm the trial court's finding that Stepfather had not established, by clear and convincing evidence, that Father had willfully failed to visit in the four months preceding the filing of the petition.

The child will soon be fifteen years old, and in little more than three years he will be able to decide for himself the type of relationship he has with Father. In the meantime, Father should not be prevented from being involved in the child's life. The child's relationship with Stepfather will presumably remain the same regardless of the fact that Stepfather is unable to adopt him.

## CONCLUSION

Stepfather has failed to carry his burden of proving by clear and convincing evidence that Father has abandoned the child. Consequently, Stepfather has not established a ground for termination of Father's parental rights. The trial court's judgment denying the petition to terminate is therefore affirmed. The costs of this appeal shall be taxed to B.B. and E.B., for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[5]It is reasonable to assume that if the child had a laptop, Father would be able to communicate more easily, conveniently, and frequently with the child.