# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 19, 2015 Session

## UTOPIA PLACE, LLC, ET AL. v. EASTERN PROPERTIES, INC.-BELLEVUE, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 131684II Carol L. McCoy, Chancellor

———————————————————

### No. M2014-02196-COA-R3-CV – Filed July 20, 2016

———————————————————

A commercial landlord filed suit against its tenant seeking a declaratory judgment that the purchase option and right of first refusal in their lease were no longer enforceable and damages for tortious interference with business relations. On a motion for summary judgment, the trial court found that all rights of the tenant to purchase the leased premises were void. The landlord subsequently voluntarily dismissed its tortious interference claim, and the trial court entered an order dismissing the claim without prejudice. The order dismissing the claim disposed of the last claim asserted by the landlord. Several months later, the trial court entered an order dismissing the case with prejudice and taxing costs to the landlord. The tenant filed its notice of appeal within thirty days of the order dismissing the case with prejudice. Because we find the notice of appeal untimely, we dismiss the appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Stanley A. Kweller, Nashville, Tennessee, and J. Trent Lehman, Brentwood, Tennessee, for the appellants, Eastern Properties, Inc.-Bellevue and James Chick.

W. Scott Sims, Nashville, Tennessee, for the appellees, Utopia Place, LLC and Utopia Place II, LLC.

# OPINION

## I. FACTUAL BACKGROUND[1]

On March 4, 2002, Eastern Properties, Inc.-Bellevue entered into a lease agreement with Ms. Angelia Nicholson Duncan for premises known as 206½ Printers Alley, Nashville, Tennessee. The leased premises were part of a larger building that stretched from Printers Alley to Fourth Avenue North. The lease agreement contained a purchase option for a set sum and a right of first refusal if Ms. Duncan received a purchase offer from a third-party. The lease agreement described the purchase option and right of first refusal as follows:

> Tenant may purchase said real property from Landlord for the sum of $750,000.00. The terms are as follows: 20% down payment and the balance due in 180 equal monthly payments bearing 8% interest over the next 15 year period. This note maybe [sic] paid in full at any time without penalty. If Landlord, Angelia Duncan, has a legitimate purchase offer greater than $750,000.00 during any period covered by this Lease, the Tenant shall have 90 days to match said contract for sale. The Tenant will be notified at the address above by certified mail which shall include said contract. The 90 day time begins with the mailing to Tenant. If Tenant's [sic] failure [sic] to match said contract within 90 day time period, subsequent execution of that contract, voids all rights of Tenant to purchase granted by this Lease. All other Tenant's rights are to remain as specified in said Lease.

The lease agreement did not define the term "real property" as being either the leased premises or the building.

In May of 2004, Utopia Place, LLC purchased the building from Ms. Duncan. Ms. Duncan also assigned to Utopia Place the lease agreement between her and Eastern Properties. In a later affidavit, Ms. Duncan stated that she never provided written notice of the sale by mail, certified or otherwise, to the sole shareholder of Eastern Properties, Mr. James Chick. However, the assignment of the lease agreement was recorded with the Davidson County Register of Deeds, and a representative of Utopia Place stated in an affidavit that Eastern Properties made lease payments to Utopia Place after it purchased the building.

On July 1, 2013, Utopia Place and Utopia Place II, LLC (collectively, the "Utopia Entities") reached an agreement to sell the building where the leased premises were located

---

[1] Except as otherwise indicated, our recitation of the facts relies on admissions by the parties in their pleadings, facts that the parties agreed were undisputed for purposes of summary judgment, and admissions found in the parties' briefs.

and adjacent buildings to a third-party for $3.9 million. At the time, the lease agreement between Utopia Place and Eastern Properties remained in effect, and on August 7, 2013, counsel for Utopia Place sent a letter via e-mail and certified mail advising Eastern Properties of the agreement to sell. The letter also stated, "Although you waived the Right of First Refusal set forth in Section 3 [sic] of the Lease upon my client's acquisition of the Premises in 2004, my client is willing, out of an abundance of caution, to allow you to match the terms and conditions set forth in the Agreement."

Counsel for Eastern Properties responded by letter dated November 1, 2013. In the letter, counsel wrote "please accept this as notice of the Tenant [sic] execution [sic] of its option . . . for the purchase of property in the amount of $750,000.00." The letter went on to provide that "[a] $150,000.00 payment representing 20% of the purchase price of $750,000.00 will be made at the closing of the sale, as stated in [the lease agreement]."

## II. PROCEDURAL HISTORY

The Utopia Entities filed suit against Eastern Properties and Mr. Chick in the Chancery Court for Davidson County, Tennessee, on December 4, 2013. The complaint identified two counts. Under count one, the Utopia Entities sought a declaratory judgment that Eastern Properties had no right to purchase the leased premises for $750,000 and no present or future right of first refusal under the lease agreement. Under count two, the Utopia Entities sought damages, including punitive damages, against Eastern Properties and Mr. Chick for tortious interference with business relations. The Utopia Entities also sought an award of reasonable attorneys' fees. Eastern Properties and Mr. Chick answered on January 3, 2014. They did not assert a counter-claim.

On January 14, 2014, the Utopia Entities filed a motion for summary judgment. Although not entitled a motion for partial summary judgment, the motion only sought summary judgment on the declaratory judgment count of the complaint. Eastern Properties and Mr. Chick responded in opposition, and the trial court held a hearing at which it concluded, based on the undisputed facts, that Eastern Properties had waived its rights under the lease agreement. The court entered its order granting the motion for partial summary judgment on March 12, 2014. Specifically, the order provided the "motion for summary judgment on Count I of the complaint is granted, and the Court hereby enters a declaratory judgment that any and all rights of Defendants to purchase granted by the Lease Agreement at issue in this action are void."

On March 25, 2014, the Utopia Entities filed an application for attorneys' fees and expenses. The Utopia Entities argued that an award of attorneys' fees and expenses was allowed under the terms of the lease agreement. In response, Eastern Properties and Mr. Chick argued that the application should be denied for two reasons. First, they claimed that the application was "premature since there ha[d] been no final judgment in this case

3

under Tennessee Rule of Civil Procedure 54.02 and the merits of Count II of the Plaintiffs' complaint remain completely untested by the Court." Second, they asserted that the lease agreement did not permit an award of attorneys' fees and costs where the landlord commenced suit on a basis unrelated to a tenant default.

Although counsel for the Utopia Entities promised to voluntarily dismiss the second count of the complaint if the application for attorneys' fees and expenses was granted, the court agreed that the application was premature. However, the court decided that the "more compelling" reason for denying the application was the language of the lease agreement. The court concluded that the attorneys' fees provision was actually intended to protect the landlord if it was involuntarily made a party to litigation or if the landlord desired to enforce a provision of the lease agreement. The trial court entered its order denying the application for attorneys' fees and expenses on April 28, 2014.

On May 12, 2014, the Utopia Entities voluntarily dismissed count two of their complaint, and on May 19, 2014, the court entered an order stating "that Count II of the Complaint, alleging tortious interference with business relations, is dismissed without prejudice."

After the dismissal of the last remaining count, the case stayed dormant for several months, and then, on September 19, 2014, Eastern Properties and Mr. Chick filed a motion to alter or amend the March 12, 2014 order granting partial summary judgment. Also on September 19, 2014, counsel for the Utopia Entities submitted a proposed order, which read as follows:

### ORDER OF DISMISSAL

All of the claims in this matter have been fully and finally resolved by prior orders of the Court. Accordingly, this action is hereby dismissed with prejudice. All court costs are taxed to plaintiffs, for which execution may issue if necessary.

It is so ORDERED.

The trial court entered the order on September 25, 2014.

On October 22, 2014, the court also denied the motion to alter or amend. Although the Utopia Entities opposed the motion to alter or amend in part on the ground that it was untimely, the court decided the motion on another ground.[2] The court concluded that the

---

[2] With regard to the timeliness of the motion, the trial court judge stated that "I think it's a good argument, but I'd like the Court of Appeals to address it."

4

motion was an impermissible attempt to raise a previously unasserted legal theory.

Eastern Properties and Mr. Chick filed a notice of appeal on October 24, 2014. Eastern Properties and Mr. Chick, as appellants, and the Utopia Entities, as appellees, state the issues for review differently, but all parties ask us to consider whether the May 19, 2014 order dismissing the last remaining count of the complaint was a final order for purposes of appeal. The resolution of this issue determines the timeliness of the appeal.

## III. ANALYSIS

Under the Tennessee Rules of Appellate Procedure, "every final judgment entered by a trial court . . . is appealable as of right." Tenn. R. App. P. 3(a). In an appeal as of right, "the notice of appeal . . . shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). If a notice of appeal is not timely filed, we lack subject matter jurisdiction to hear the appeal. *McGaugh v. Galbreath*, 996 S.W.2d 186, 189 (Tenn. Ct. App. 1998). Subject matter jurisdiction implicates our power to adjudicate a particular type of case or controversy. *Osborn v. Marr,* 127 S.W.3d 737, 739 (Tenn. 2004); *Toms v. Toms,* 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). If we lack subject matter jurisdiction, we are required to dismiss the appeal. *See* Tenn. R. App. P. 3(e); *Arfken & Associates, P.A. v. Simpson Bridge Co., Inc.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002). Subject matter jurisdiction is a threshold inquiry, which we consider in every appeal irrespective of whether the issue is raised by the parties. Tenn. R. App. P. 13(b); *State v. Carter*, 988 S.W.2d 145, 148 (Tenn. 1999).

The subject matter jurisdiction inquiry for appellate courts begins with a determination of if and when a final judgment was entered. The Tennessee Rules of Appellate Procedure define "final judgment" by exclusion. A final judgment is not an "order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Tenn. R. App. P. 3(a). Orders that resolve fewer than all claims or the rights and liabilities of fewer than all the parties are "subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties." *Id.* Our Supreme Court has described a final judgment as a judgment "that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009).

The Utopia Entities argue that the order dismissing the only remaining claim of their complaint entered on May 19, 2014, was a final judgment. If they are correct, Eastern Properties and Mr. Chick's notice of appeal was untimely. Eastern Properties and Mr. Chick, relying on the language of Tennessee Rule of Appellate Procedure 3, argue that the order entered on May 19, 2014, dismissing only the second of two counts could not be the final judgment because it "adjudicate[d] fewer than all the claims." *See* Tenn. R. App. P. 3(a). In

their words, you may not "stack" orders to achieve a final judgment and that a single order must address, if not resolve, all claims for it to be a final judgment. Therefore, they submit the order of dismissal entered on September 25, 2014, was the final judgment. If they are correct, the notice of appeal was timely.

We conclude that the order entered on May 19, 2014, constituted the final judgment. After May 19, 2014, the trial court had nothing left to adjudicate. To determine "whether an order operates as a final judgment, we must examine the parties' claims and the manner in which the trial court adjudicated those claims." *Ball*, 288 S.W.3d at 836. Although their complaint contained two counts, the Utopia Entities made essentially three claims. The court adjudicated the first claim, for a declaratory judgment, with the entry of its order granting the motion for partial summary judgment on March 12, 2014. The court adjudicated the second claim, for attorneys' fees and expense, with the entry of its order denying the application for attorneys' fees and expenses on April 28, 2014. The court adjudicated the third and final claim, for damages based on tortious interference with business relations, with the entry of its order dismissing without prejudice the claim for tortious interference with business relations on May 19, 2014. The three orders, considered together, terminated this case.

Finality may be achieved through a series of orders. As we have noted previously, an order or judgment is final when it disposes "of all *pending* claims." *Edwards v. Banco Lumber Co., Inc.*, 101 S.W.3d 69, 75 (Tenn. Ct. App. 2002) (emphasis added). Because we concern ourselves with pending claims in determining whether an order or judgment is final, it is not unusual for us to consider a series of orders in the finality analysis. For example, in *Briley v. Chapman*, 182 S.W.3d 884 (Tenn. Ct. App. 2005), we addressed a situation similar to the one before us here. In that case, the plaintiffs resolved their claims against most of the defendants by an agreed order. *Id.* at 888. The trial court later entered an order, which we described as an "interim 'Order,'" dismissing the claims against the remaining defendants on cross-motions for summary judgment. *Id.* Six months after entry of the order granting the remaining defendants summary judgment, "the trial court entered an 'Agreed Final Order,' which reflected on its face that all matters between the parties had been finally disposed of . . . ." *Id.* at 889. Plaintiffs then filed a notice of appeal within thirty days after entry of the Agreed Final Order. *Id.* We held the appeal was untimely, reasoning that the order granting some of the defendants summary judgment "disposed of the only remaining claims in the case and, therefore, constituted the final order." *Id.*

The concept of achieving finality through a series of orders or "cumulative finality" is not unique to Tennessee jurisprudence. Cumulative finality is also recognized in federal procedure, procedure our courts have looked to in considering whether an order or judgment is final. *See Ball*, 288 S.W.3d at 837. In federal practice,

> [a] series of orders disposing of various claims or parties can eventually lead to termination of the action. An order disposing of part of the case may be

6

followed by voluntary dismissal of the balance in order to achieve finality. Finality is easily found if one appeal is taken after the last order that disposes of the last remaining pieces, or if an apparently premature appeal is followed by a second appeal taken at the end.

15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3914.9 (2d ed. 1992). To paraphrase one federal court, two orders, considered together, may terminate a case just as effectively as a single order formally reciting the substance of the earlier two orders. *Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228, 1231 (5th Cir. 1973), *abrogated on other grounds by United States v. Cooper*, 135 F.3d 960 (5th Cir. 1998).

From our conclusion that the order entered on May 19, 2014, constituted the final judgment, it follows that the order of dismissal entered on September 25, 2014, was not the final judgment. For the order of dismissal to have constituted the final judgment, it must have affected "the parties' substantive rights and obligations settled by [the trial court's previous orders]." *See Ball*, 288 S.W.3d at 837. An examination of the three sentence order of dismissal confirms that the parties' substantive rights and obligations were unaffected by the order of dismissal. The first sentence of the order recites that "[a]ll of the claims in this matter have been fully and finally resolved by prior orders of the Court."

The next sentence of the order of dismissal provides, "[a]ccordingly, this action is hereby dismissed with prejudice." Although it might be argued that this sentence impacted the Utopia Entities' rights by dismissing with prejudice the tortious interference with business relations claim, which had previously been dismissed without prejudice, we disagree. A court's "orders and judgments should be construed like other written instruments." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 356 n.19 (Tenn. 2008). We must look to all parts of the order or judgment to gather the intention of the court. *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982). In this case, the opening sentence of the order of dismissal makes clear the court's intention. To read the next sentence as dismissing the action with prejudice would undo, not only the prior order dismissing the tortious interference with business relations claim without prejudice, but also the court's previous grant of partial summary judgment.

The final sentence of the order provides, "[a]ll court costs are taxed to plaintiffs, for which execution may issue if necessary." Court costs do not factor into the determination of whether an order or judgment is final. Therefore, "[a] decree will be treated as final, and an appeal entertained only where there is nothing left for future determination *except the adjudication of the costs*." *Mengle Box Co. v. Lauderdale Cty.*, 230 S.W. 963, 966 (Tenn. 1921) (emphasis added). [3]

---

[3] Eastern Properties and Mr. Chick argue that, by local rule, all final orders and judgments must include an assessment of court costs. The local rules state that "[a]ll final judgments shall provide for the

## IV. CONCLUSION

Because the order entered on May 19, 2014, constituted the final judgment, Eastern Properties and Mr. Chick's notice of appeal was untimely. Consequently, we lack jurisdiction to hear any of the issues raised concerning the orders of the trial court. Accordingly, this appeal is dismissed.

_____
W. NEAL MCBRAYER, JUDGE

taxing of court costs." Rule 33.03(a), Local Rules of Practice of the Courts of Record of Davidson County. Although local rules may require that final judgments provide for the taxing of court costs, a local rule may not alter what constitutes a final judgment under the Tennessee Rules of Appellate Procedure. *See* Tenn. Sup. Ct. R. 18 ("Each judicial district may also adopt other uniform rules not inconsistent with the statutory law, the Rules of the Supreme Court, the Rules of Appellate Procedure, the Rules of Civil Procedure, the Rules of Criminal Procedure, the Rules of Juvenile Procedure, and the Rules of Evidence.").