IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 7, 2023

## IN RE BLAKE V.

**Appeal from the Juvenile Court for Montgomery County**
**No. 2019-JV-2033      Tim Barnes, Judge**

_____

### No. M2022-01582-COA-R3-PT

_____

A mother sought to terminate the parental rights of her child's father pursuant to the grounds of abandonment by failure to visit and abandonment by failure to support. At the conclusion of the termination hearing, the trial court concluded that the mother failed to prove any termination grounds by clear and convincing evidence and dismissed her termination petition. Determining that the mother lacked standing to seek termination of the father's parental rights pursuant to those grounds, we affirm the trial court's dismissal of the termination petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which KENNY W. ARMSTRONG and JEFFREY USMAN, JJ., joined.

Steven C. Girsky, Clarksville, Tennessee, for the appellant, Emily C.

Kimberly Gail Turner, Clarksville, Tennessee, for the appellee, Gregory V.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Emily C. ("Mother") and Gregory V. ("Father") are the biological parents of Blake V. (born in 2018). Mother and Father were married at the time of the child's conception and birth, but they divorced approximately eight months after the child's birth. Mother and Father then engaged in protracted post-divorce litigation in the Montgomery County Circuit Court over issues relating to child support, contempt, and modification of visitation.

Ultimately, Mother and Father mediated these issues on November 14, 2019. The mediation culminated in Mother and Father executing an agreement whereby Father

"agree[d] to surrender all of his parental rights to the minor child . . . and to do any and all things necessary to terminate his parental rights" in exchange for Mother "agree[ing] to waive any and all back child support obligations of whatever kind and whatever nature to include attorney's fees, medical expenses, etc[.] that includes the minor child." After signing this agreement, Father signed a second document titled "Waiver of Interest and Consent to Terminate Parental Rights." In this document, Father acknowledged that he did not wish to provide care or support for the child and consented to the termination of his parental rights.

Based on the mediation agreement, the circuit court entered an agreed order on December 4, 2019, resolving all of the outstanding post-divorce issues and providing, in pertinent part, as follows:

> The Father's financial obligations owed to the Mother are hereby terminated upon entry of the Order terminating his parental rights, to include medical bills for the child, child support, attorney fees and any other obligation that may be owed to the Mother.

The day before the circuit court filed the agreed order, Mother filed a petition to terminate Father's parental rights in the Montgomery County Juvenile Court ("the trial court"). She claimed that Father's parental rights should be terminated based on his agreement to surrender his parental rights and on his "willful abandonment of the child, failure to pay the correct amount of child support or pay any child support, [and] failure to pay his portion of the child's medical bills." Notably, no adoption petition was filed before or after the filing of the termination petition. Mother sought termination of Father's parental rights so she could become the child's sole provider and so she and the child could share the same surname. Father filed an answer and counter-petition[1] offering several reasons for his failure to pay child support.

On May 11, 2021, the day before the scheduled termination hearing, Mother filed a motion requesting leave to file an amended petition with the proposed amended petition attached. The amended petition was very similar to the original petition, but it added facts relating to Father's agreement to surrender his parental rights and added an allegation that, "[i]n the four (4) months preceding the filing of this Amended Petition, the Father has not had any visitation with the minor child and has not paid any support to the Mother for the benefit of the minor child." The amended petition also included an allegation that Mother's sister desired to be the permanent guardian of the child in the event of Mother's death or incapacitation.

---

[1] Father's counter-petition did not seek to terminate Mother's parental rights. Rather, it sought to maximize visitation for both parents.

At the beginning of the termination hearing, the trial court addressed the motion to amend as a preliminary matter and sought clarification from Mother's attorney regarding the termination grounds asserted in the original petition. Mother's attorney confirmed that the original petition asserted as termination grounds "abandonment by failure to visit and abandonment by failure to support."[2] Mother's attorney further confirmed for the court that the amended petition asserted "the same [termination] grounds . . . just sa[id], hey, there's further facts that go to current." With no objection from Father, the court granted Mother leave to amend, and the hearing proceeded on the amended petition.

After hearing opening statements, the trial court informed the parties that, for the abandonment grounds, it would be considering the four-months immediately preceding the filing of the original petition. Mother disagreed and argued that the filing of the amended petition made the relevant four-month period the four months immediately preceding the filing of the amended petition. The court decided to reschedule the hearing in order to research the time-period issue.[3] When the trial resumed, however, the court never addressed the relevant four-month period issue.

At the conclusion of all the proof, the trial court entered an order dismissing the termination petition based on its determination that Mother failed to prove by clear and convincing evidence that at least one ground for termination existed. In making its determination, the court found that the signed mediation agreement to terminate Father's parental rights was *void ab initio* because it was against public policy due to there being

---

[2] Throughout her pleadings filed in the trial court and her appellate brief filed with this Court, Mother claims that Father's parental rights should be terminated based on the "Willful Abandonment" ground. Tennessee Code Annotated section 36-1-113(g)(1) allows for termination of a parent's parental rights based on abandonment, "as defined in § 36-1-102." Tennessee Code Annotated section 36-1-102(1)(A) provides five definitions for abandonment, including the parent's failure to visit or to support the child for a period of four months immediately preceding the filing of a termination petition. Tenn. Code Ann. § 36-1-102(1)(A)(i). A parent's lack of willfulness is an affirmative defense to abandonment by failure to visit or failure to support. *Id.* 36-1-102(1)(I). Mother's termination petition, amended petition, and appellate brief include no citation to either of the foregoing statutes. Rather, she repeatedly references the termination grounds located in Tenn. Code Ann. § 36-1-113(g)(9)(A), which are not limited to the four months immediately preceding the filing of the termination petition and apply to putative fathers. Nevertheless, when Mother's attorney informed the trial court that Mother sought to terminate Father's parental rights pursuant to the grounds of abandonment by failure to visit and abandonment by failure to support, Father did not object. In fact, the record indicates that Father consented to these two grounds being tried because his attorney engaged in discussions with Mother's attorney and the court regarding the applicable four-month period for those termination grounds. *See In re Lauren F.*, No. W2020-01732-COA-R3-PT, 2021 WL 5234712, at *8 (Tenn. Ct. App. Nov. 10, 2021) (finding that the issue of failure to support was tried by implied consent).

[3] The following day, without leave of court and without filing a motion requesting the court's leave, Mother filed a second amended petition that included a request for the court to appoint a guardian ad litem. Nothing in the record indicates that the court proceeded on the second amended petition, but a guardian ad litem was appointed.

no pending adoption. The court further found that, before November 2019, Father visited and provided support for the child in amounts "far above the token visitation [and support] required to find abandonment." Lastly, the court found that Father's lack of visitation and support after November 2019 "was a mutual mistake of fact dependent on a *void ab initio* document that is against public policy" because the parties "operated as if a termination had occurred after the documents were signed in mediation in November 2019."

Mother appealed and presents several issues for our review, which we quote directly from her appellate brief:

1. Whether the trial court erred in finding that the parties' agreement for Father to terminate his parental rights was against public policy?
2. Whether the trial court erred in finding that the parties' agreement for Father to terminate his parental rights was a mutual mistake of fact?
3. Whether the trial court erred in not addressing the four (4) month period preceding the amended and second amended petitions when analyzing the grounds for termination?
4. Whether the trial court erred in finding that Father had not abandoned the child?
5. Whether the trial court erred in not finding that Father willfully failed to support his child?

ANALYSIS

Before we can consider the substantive issues Mother presents, we must consider an issue raised by Father: whether we have subject matter jurisdiction to decide the matter. *See* TENN. R. APP. P. 13(b) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review[.]"). Subject matter jurisdiction concerns "a court's lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *see also Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012). Although Father did not raise subject matter jurisdiction as an issue in the trial court, we are not precluded from considering it for the first time on appeal because subject matter jurisdiction cannot be waived.[4] *Meighan v. U.S. Sprint Commc'ns. Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *see also Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015) ("[S]ubject matter jurisdiction may be challenged at any time and may be raised by a court on its own motion, even if the parties have not raised the issue.").

Courts derive their authority to adjudicate controversies by constitutional or legislative act. *Northland Ins. Co.*, 33 S.W.3d at 729. Because both the federal and state

---

[4] Mother elected not to file a reply brief addressing this issue.

constitutions provide parents with a fundamental right to the care, custody, and control of their children, courts may terminate a parent's parental rights only in certain situations. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). The Tennessee General Assembly has adopted statutes defining "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)). Therefore, Tennessee courts have authority to terminate a parent's parental rights only when "there is specific statutory authority to do so." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004).

Tennessee Code Annotated section 36-13-113(b) identifies who has standing to file a termination petition. When Mother filed her termination petition, Tenn. Code Ann. § 36-1-113(b) (2019) stated:

> The prospective adoptive parent or parents, including extended family members caring for a related child, any licensed child-placing agency having physical custody of the child, the child's guardian ad litem, or the department shall have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child. The child's parent, pursuant to subdivision (g)(10), (g)(11), or (g)(15), shall also have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child. The prospective adoptive parents, including extended family members caring for a related child, shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

Interpreting a prior version of this statute, the Tennessee Supreme Court held as follows:

> When a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite. *See, e.g., Grom v. Burgoon*, 448 Pa.Super. 616, 672 A.2d 823, 824 (1996). Because the legislature specifically designated who may file a petition to terminate parental rights, a court does not have subject matter jurisdiction to hear such a petition unless the party filing the petition has standing. Standing, therefore, is a necessary prerequisite to the court's exercise of subject matter jurisdiction in termination of parental rights cases. Consequently, we must

consider the issue of standing, even though it was not raised below by the parties. *See* Tenn. R. App. P. 13(b) (stating that "[t]he appellate court shall . . . consider whether the trial and appellate court have jurisdiction over the subject matter, *whether or not presented for review*") (emphasis added). Standing is a component of subject matter jurisdiction in this case, so it cannot be waived. *See Meighan*, 924 S.W.2d at 639.

*Osborn*, 127 S.W.3d at 740. The Court further held that "[t]his statute, which is part of Tennessee's adoption law, must be strictly construed because it in derogation of the common law." *Id.*

When construing statutes, our primary objective "is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute," *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007), "'without unduly restricting or expanding'" the coverage of the statute beyond its intended scope. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). To achieve this objective, we look to the plain and ordinary meaning of the language in the statute. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). If a statute's language is clear and unambiguous, we "need not look beyond the statute itself to ascertain its meaning." *Id.* at 527.

The language in Tenn. Code Ann. § 36-1-113(b) is clear and unambiguous. The statute gives the parent of a child standing to file a petition to terminate parental rights in only three situations: (1) the other parent has been convicted of rape, aggravated rape, or rape of a child, and the child was conceived from the crime; (2) the other parent has been convicted of severe child sexual abuse; and (3) the other parent has been convicted of attempted first degree murder or attempted second degree murder of the non-offending parent. Tenn. Code Ann. § 36-1-113(b), (g)(10)-(11), (15). The statute omits the parent of a child from the list of persons or entities having standing to file a termination petition based on any of the other termination grounds. *See* Tenn. Code Ann. § 36-1-113(g)(10)(B) ("Nothing in this section shall give a parent standing to file a petition to terminate parental rights based on grounds other than those listed in this subdivision (g)(10) or subdivision (g)(11) or (g)(15)); *see also* Tenn. Code Ann. § 36-1-113(g)(11)(B), (15)(B).

As our Supreme Court has explained:

The legislature's decision to omit a child's parent from those persons with standing to terminate parental rights [under any of the other grounds] is consistent with statutes governing other aspects of a parent-child relationship. A parent has the duty to financially support his or her children. *See* Tenn. Code Ann. § 34-1-102 (2001); *Gallaher v. Elam*, 104 S.W.3d 455,

461 (Tenn. 2003). When parental rights are terminated, all legal rights and obligations of the parent are severed, including the duty to provide support. *See* Tenn. Code Ann. § 36-1-113(*l* )(1) (2001). The termination of a parent's parental rights outside the context of a prospective adoption would deny the child the support of two parents.

*Osborn*, 127 S.W.3d at 740.

Here, Mother sought to terminate Father's parental rights based on the grounds of abandonment by failure to visit and abandonment by failure to support. *See* Tenn. Code Ann. §§ 36-1-102(1)(A)(i), 36-1-113(g)(1). Because Tenn. Code Ann. § 36-1-113 does not give a child's parent standing to file a termination petition based on these grounds, Mother lacked standing to file her termination petition seeking to terminate Father's parental rights.

Nonetheless, Mother believes she still has standing to file a petition to terminate Father's parental rights because Father voluntarily surrendered his parental rights to her when he signed the "Waiver of Interest and Consent to Terminate Parental Rights" document. Mother is correct that Tenn. Code Ann. § 36-1-111 provides specific steps for a parent to voluntarily surrender his or her parental rights. Notably, the surrendering parent must sign a written surrender form "contain[ing] statements comparable to the 'Form of Surrender' set forth in subdivision (b)(3)." Tenn. Code Ann. § 36-1-111(b)(2). The "Waiver of Interest and Consent to Terminate Parental Rights" document that Father signed contained statements similar to those found in subdivision (b)(3), but the document fails to satisfy a key component of the statute. Specifically, the statute provides that "[a] surrender or parental consent may be made or given to any prospective adoptive parent who has attained eighteen (18) years of age, the department, or a licensed child-placing agency." Tenn. Code Ann. § 36-1-111(c). The legislature omitted the child's other biological parent from the list of people or entities to whom a surrender of parental rights may be made. Therefore, Father could not surrender his parental rights to Mother.

In light of the foregoing, we conclude that the trial court lacked subject matter jurisdiction to hear Mother's termination petition. We affirm the trial court's dismissal of her termination petition and do not reach the merits of her appeal. *See Osborn*, 127 S.W.3d at 741 (quoting *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)) ("'[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal.'").

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Emily C., for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE