IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 2, 2016

## IN RE ELIZABETH D.[1]

**Appeal from the Circuit Court for Greene County**
**No. 14A007   Thomas J. Wright, Judge**

_____

### No. E2015-02097-COA-R3-PT-FILED-SEPTEMBER 23, 2016

_____

The custodians of a child filed a petition in Greene County Circuit Court to terminate the parental rights of the Father to the child, who had resided with the Custodians since birth; at the time of the hearing on the petition, the Father was incarcerated in Florida. Following a three-day hearing extending over one month, the court entered an order holding that Father failed to visit or support the child within the four months preceding his incarceration and terminating Father's rights on the grounds of abandonment. Father appeals, asserting that the conduct of the hearing denied him his due process right to meaningfully participate in the termination proceeding and that the record does not support the determination that he willfully failed to visit or support his child. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Nikolas Vaselopulos, Greeneville, Tennessee, for the appellant, Timothy S.

T. Wood Smith, Greeneville, Tennessee, for the appellee, Christopher M. and Micah M.

**OPINION**

**I. HISTORY**

This appeal arises from a proceeding to terminate parental rights. Elizabeth D. was

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

born out of wedlock to Jessica D. ("Mother") and Timothy S. ("Father") in August 2011; at the time of Elizabeth's birth, Mother was living in Tennessee, and Father was living in Florida. At birth Elizabeth tested positive for drugs in her system and remained in the hospital for treatment; temporary custody was granted to Christopher and Micah M. ("Mr. M.", "Ms. M." or "Petitioners") while she was hospitalized and, upon her release, Elizabeth went to live in the home of Petitioners, where she has remained.[2] Both Mother and Father signed a Consent to Adoption in January 2012.

Petitioners and Mother filed a Petition for Adoption and Termination of Parental Rights in Greene County Circuit Court on March 18, 2014.[3] The petition alleged that Elizabeth had lived with the foster parents since her release from the hospital; that neither Mother nor Father was able to provide financial care, separately or jointly; that both parents had signed a Consent for Adoption; that Father had willfully abandoned Elizabeth by failing to visit or provide support; and that Father had been incarcerated since September 14, 2012.

A trial was held on July 13 and 30 and August 14, 2015.[4] On September 30, 2015, an order terminating Father's parental rights was entered; the court's findings pertinent to this appeal include:

6. (a) That the grounds for termination of the parental rights of [Father] in [Elizabeth], have been established.

(b) That, since the Respondent was incarcerated for the four (4) months next preceding the filing of the Petition herein, the Court has considered the four (4) months next preceding his incarceration in determining whether grounds for termination exist; that the Respondent was incarcerated in September, 2012.

---

[2] The Petition to terminate and adopt alleged that a separate proceeding was initiated in Knox County Juvenile Court while Elizabeth was hospitalized, as a result of which Petitioners obtained custody of her.

[3] Mother's parental rights are not an issue in this case. The Petition for Termination was sworn to and, as respects Mother's rights, the pertinent allegations state:

22. The Mother joins in this Petition Co-Petitioner in order to give her full consent to the adoption of the child by the Petitioners. By her signature below, she acknowledges that consent, and acknowledges that her parental rights will be terminated forever. The Mother understands that once this adoption is completed, she shall have no rights to the custody, control, or visitation with the child in the future. The Mother has signed a Consent to Adoption, executed January 19, 2012. The Mother understands that the entry of an Order confirming her parental consent, without revoking the parental consent prior to the entry of such Order, will terminate her parental rights to the child forever and that she will have no legal right to the custody, control or visitation with the child in the future.

[4] The record includes transcripts of the July 30 and August 14 hearings and an Agreed Summary of Court Proceedings on July 13, 2015, which was signed by counsel for the parties and the Guardian Ad Litem.

(c) That, in the four (4) months next preceding the incarceration of the Respondent, he made no visits to the child, nor did he make any reasonable effort to visit the child, nor did he provide any support whatsoever for the child.

(d) That the Respondent effectively abandoned the child, as abandonment is defined in T.C.A. §36-1-102.

(e) That the Respondent made a less than nominal attempt to establish and maintain a relationship with the child, including one Skype communication, and approximately ten (10) telephone calls, most of which were originated by the Petitioner [Mr. M.]; not all of these communications were made in the four (4) months next preceding the incarceration of the Respondent/Father.

(f) That the Respondent, during the four (4) months next preceding his incarceration, had funds available to him, through his employment, with which he could have provided support for the child.

(g) That, during the four (4) months next preceding the incarceration of the Respondent, the Respondent was under no disability whereby he was prevented from earning an income.

(h) That the Respondent has suffered from a drug addiction for nearly 20 years and his completion of a drug class did not change his behavior related to his addiction.

(i) That the Respondent was aware of the proceedings in the Knox County Juvenile Court, begun in 2011, and never made an effort to participate in those proceedings, nor did he ever voice any objection to the Petitioners herein being awarded custody of the child through those proceedings.

(j) That the Respondent was in agreement for the adoption of the child by the Petitioners herein until his incarceration in September, 2012, and at such time he learned that the name of the child would be changed through the adoption proceedings.

(k) That the Court credits the testimony of [Petitioners]; their veracity is unquestioned; if any discrepancies in the testimony of the parties exist, those discrepancies are resolved in favor of the Petitioners.

(1) That the best interest of the child require the termination of the Respondent's parental rights; and that the best chance for the child to have a stable life and to thrive requires that his parental rights be terminated; further, that for the child to achieve permanency in her placement, the parental rights of the Respondent must be terminated.

(m) That the Respondent has a lengthy history of criminal behavior and drug abuse.

(n) That the long term prognosis for the Respondent's sobriety and becoming a law abiding citizen upon his release, without significant help, is small.

3

(o) That for the near future, the prognosis of the Respondent becoming a law abiding citizen and maintaining his sobriety is nil.

(p) That the Respondent has no ongoing relationship with the child.

(q) That the child has bonded with [Petitioners]; that the child has a well established sibling relationship with [Petitioner's son].

(r) That separating the child from the Petitioners and the child she knows as her brother would be severely emotionally damaging to the child.

(s) That, throughout his testimony in this proceeding, the Respondent never made an expression of love for the child.

(t) That the Respondent has never taken full responsibility for all of his actions and for his failures as they regard the child; that that failure does not bode well for the child's future if the parent/child relationship continues.

7. That termination of the parental rights of [Father] in the minor child, [Elizabeth], is in the best interests of the child.

* * *

12. That [Father] has failed, without due cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the Tennessee Department of Children's Services pursuant to T.C.A. §36-5-101, including during the time after the child's birth in which [Father] was not incarcerated and was employed.

13. That [Father] has failed to seek reasonable visitation with the child.

14. That [Father] has failed to manifest an ability and willingness to assume legal and physical custody of the child.

15. That placing custody of [Elizabeth] in the legal and physical custody of [Father] would pose a risk of substantial harm to her physical or psychological welfare.

16. That [Father] has failed to make such an adjustment of circumstance conduct, or conditions as to make it safe and in the best interest of [Elizabeth] to be in the home of [Father].

17. That [Father] has never maintained regular visitation or other contact with [Elizabeth], and in fact has never been in the presence of the child; that no meaningful relationship has otherwise been established between [Father] and [Elizabeth]; that a change of care-taker's and physical environment of the child

4

is likely to have a harmful and extremely negative effect on the child's emotional, psychological and medical condition.

\* \* \*

22. The Court further finds that the date of the filing of the Petition for Adoption and Termination of Parental Rights was March 18, 2014.

Father appeals the termination of his parental rights, asserting that the trial court denied his right to a meaningful opportunity to participate in the hearing and by denying his motion to continue the July 30, 2015 hearing, in finding that he willfully failed to visit and support Elizabeth, and in finding that termination of his rights was in Elizabeth's best interest.

## II. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). However, that right is not absolute and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.*, 154 S.W3d 586, 589 (Tenn. Ct. App. 2004). The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Thus, parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. ' 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence. *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases. A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. ' 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial

court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III. DISCUSSION

### A. Due Process

At the time of the hearing, Father was incarcerated in the Pinellas County jail in Clearwater, Florida. Father contends that he was denied his due process to a "meaningful opportunity to participate" in the hearing, arguing that "the court erred by failing to consider any alternatives at all, or at the barest minimum, to utilize teleconferencing equipment." While Father takes issue with the logistics by which he participated, the record does not show that any alternatives were available to him or to the court.

In the order terminating Father's rights, the court made the following finding relative to the conduct of the hearing under those circumstances:

> That [Father] is incarcerated in the State of Florida, and will be so incarcerated for an undetermined period of time; that arrangements were made for his participation by telephone; that said telephonic communication was done so that [Father] could hear the proceedings in the courtroom, and could address the court when appropriate, and could communicate with his attorney outside of the hearing of others; and that the rights of [Father] to participate in the trial of this cause were protected.

A more detailed description of the conditions of the arrangements is not in the record. It is apparent from the transcripts of the July 30 and August 14 hearings that Father participated by phone, with the proceedings in the courtroom being transmitted via cellphone to him in a common area of the jail. The time available to Father to be on the phone was limited, necessitating three days to complete the hearing. At each hearing, Father's counsel was present in the courtroom, as well as the guardian *ad litem*.

Tenn. Code Ann. § 36-1-113(f)(3) provides that in termination actions where the parent is incarcerated:

> [T]he incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication, or other means deemed by the court to be appropriate under the circumstances.

6

At the start of the July 13 hearing the court determined, and Father agreed, that the microphone was placed appropriately so that Father could hear the proceedings; the record of that hearing shows that the court stopped the proceedings to allow Father and his counsel to have a private conversation. On each subsequent hearing date, Father was asked and agreed that he was able to hear the proceedings all but one time; throughout each hearing the transcript affirms that the court was able to hear Father's remarks and testimony. Father's counsel did not express any particular impediment or inconvenience caused by the arrangements.

There is no evidence in the record from which to conclude that the arrangements did not satisfy Tenn. Code Ann. § 36-1-113(f)(3). A personal appearance by Father, who was incarcerated out of state, was not feasible, and there is no indication that teleconferencing capabilities were available. The court and parties made the best use of the available technology, and Father's right to participate in the hearing was not violated.

At the beginning of the hearing on July 30 , Father's counsel moved to continue the hearing, stating:

> MR. CHESNUT: Your Honor, before we start, if the Court please, I'd like to make a motion on behalf of my client. We are requesting to continue this hearing. My client has been moved around in the jail there. He had much difficulty last time hearing the actual proceedings going on. He would like to be able to discuss that with me a little bit further. Unfortunately, I had a meeting set up with him that was unable to happen. I do not know why. He would like further time to discuss that with me and his inability to be able to hear these proceedings. And so he is requesting a continuance at this time. He is being - - he is now in a different part of the jail, and she has allowed him to pick up the phone, but previously he was on speaker phone, and he has told me that he had difficulty, trouble last hearing, hearing last hearing.

Citing the limited time available for the hearing, the court denied the motion.[5] Father contends that the denial of his motion to continue was an abuse of discretion.

The standard to be applied in ruling on a motion to continue, as well as this court's review of the ruling was recently set forth in *Tidwell v. Burkes*:

---

[5] In ruling on the motion, the court stated:

> Well, we're going forward. We only have limited time with him, so any client/attorney conference is going to have to happen another time. Mr. [M.] is on the witness stand and ready. The motion is denied, and you're up.

7

Continuances are governed by Tennessee Code Annotated 20-7-101 (2009), which provides in pertinent part that continuances "may always be granted by the court, upon good cause shown, in any stage of the action." A ruling on a motion for continuance is a matter of discretion for the trial court and will not be disturbed absent a clear showing of abuse of that discretion. Decisions regarding the granting or denial of a continuance are fact-specific and should be viewed in the context of all existing circumstances present at the time of the party's request for continuance. In order to prove that a requested continuance is justified, the party requesting the continuance "must supply some 'strong excuse' for postponing the trial date." When considering a motion for continuance, the following factors are relevant to the trial court's decision: "'(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'"

*Tidwell v. Burkes*, No. M2015-01270-COA-R3-CV, 2016 WL 3771553, at *5 (Tenn. Ct. App. July 8, 2016) (internal citations omitted).

In his brief on appeal, Father states that a meeting with counsel that he scheduled between the first and second hearings was cancelled "by the Pinellas County jail." As in the presentation of the motion at trial, no elaboration or explanation of the circumstances surrounding the meeting — its cancellation, the date, why it was not reset, etc. — is given. While we are mindful of the logistical difficulties for counsel in Tennessee to consult with a client incarcerated in Florida, this record does not show any basis upon which to conclude that the court abused its discretion in denying a continuance of the second hearing, particularly in light of the fact that there was a hearing held on a third day and Father filed no motion or sought any relief or specific accommodation between the second and third hearing days.

For the foregoing reasons, we conclude that the conduct of the hearing did not constitute an abuse of discretion or deprive Father of his right to due process of law.

## B. Willful Failure to Visit and Support

Tenn. Code Ann. ' 36-1-113(g)(1) designates abandonment, as defined at Tenn. Code Ann. ' 36-1-102, as a ground for terminating parental rights. Tenn. Code Ann. ' 36-1-102 (1)(A)(i) defines "abandonment" for this purpose as follows:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent

8

or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;[6]

In *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), the court discussed willfulness in the context of termination cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . .
>
> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

182 S.W.3d at 863B64 (citations omitted).

Father does not dispute that he did not visit Elizabeth in the four months preceding his incarceration; he contends that he was unable to visit because he was not given a physical address for her[7] and because his job as a fisherman required him to stay on a boat for "periods of time." The record, however, supports a finding that Father's failure to visit was willful.

Father acknowledged that he was not incarcerated for the first year of Elizabeth's life; admitted his drug abuse from the date of Elizabeth's birth up to the date of his incarceration; and acknowledged that his addiction may have prevented him from supporting or attempting to see Elizabeth and that he made no effort to see her because he was "dealing with" his addictions. He testified further that, during the relevant period, he was living in Florida,

---

[6] Where the parent is incarcerated at the time the termination proceeding is initiated, the four month period is measured from the date of incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv).

[7] Mr. M. testified that Father had threatened to take Elizabeth and, as a consequence, he did not feel safe giving Father his home address, but instead gave Father his attorney's address.

learning a new trade, earning income, but was not financially able to travel. On cross examination, Father acknowledged that he could have purchased a bus ticket to come to Tennessee to visit Elizabeth but chose not to do so.[8] Mr. M. testified that he spoke with Father until Father's incarceration and that those calls were initiated by Petitioners. Ms. M. testified that Father did not ask for pictures of Elizabeth or express an interest in coming to see her.[9] Both petitioners testified that during conversations Father appeared more interested in Mother than Elizabeth.[10] Clearly, Father's failure to visit Elizabeth was a consequence of decisions and conscious choices he made; he was not prevented from visiting her.

Failure to pay support under the termination statutes is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C., D.M.C., and S.J.B.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (citing *In re Adoption of Muir,* 2003 WL 22794524 (Tenn. Ct. App. Nov. 25, 2003)). The fact that a parent may not be under an order to pay support is not dispositive of the question of whether the failure is willful, as "the obligation to pay support exists even in the absence of a court order to do so." *State, Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 523-524 (Tenn. Ct. App. 2004)

Father testified that he worked as a fisherman from February until September of 2012, and that he was employed as a server at a restaurant prior to that time; he acknowledged that he did not pay any support for Elizabeth during that time. With respect to income he received from employment, Father testified:

Q. Did you pay rent to live on the boat?
A. Yes, from time to time I did.
Q. Tell me about the details of that.
A. When I made a little bit of extra money, I would provide the owner with a little bit of money to help him out, which ultimately went toward getting the

---

[8] On examination by Petitioners' counsel as well as the guardian *ad litem*, Father testified that he felt that hitchhiking was too dangerous. While Father characterizes this line of inquiry as "incredulous[]," viewed in context, the inquiry is probative of Father's credibility and the believability of his testimony that he desired to see Elizabeth.

[9] This testimony conflicted with that of Father's.

[10] In this regard, Ms. M testified:

> Well, anytime [Father] would call, . . . he would talk with [Elizabeth] for a minute or two or maybe ask a question about her, but then he would ask about who [Mother] was seeing, where she was living, her relationship with her mother, and also their current living situation in Florida because he had storage there, so he was wanting to know what she was doing to obtain those objects in storage.

boat fixed so, you know, we could get the boat back up and running.
Q. Okay. And that's the same money that you could have used to support your daughter, isn't it?
A. You could say that.
* * *
A. You could also say it was an investment in spending to my future and to me doing the things that I needed to do to be able to get to the places that I needed to get to. So it can be — it can be construed as both ways.

This testimony shows that Father was working and making money but made the conscious decision to spend his earnings in ways other than contributing to the support of Elizabeth.

From the foregoing, we conclude that the evidence clearly and convincingly supports the determination that Father's failure to visit and to support Elizabeth was willful within the meaning of Tenn. Code Ann. ' 36-1-102.

## C. Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[11] The list of

---

[11] The factors at Tenn. Code Ann. § 36-1-113(i) are:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe,

11

factors in the statute "is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)). As we consider this issue we are also mindful of the following instruction in *White v. Moody*:

> [A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004) (internal citations and footnote omitted).

The trial court made extensive findings relative to the statutory factors which, upon our review, are fully supported by the evidence. Father admits that he has an extensive criminal history involving theft, public intoxication, and drug related crimes. In discussing his attempts to rehabilitate, he states, "…my life has been an ongoing relapse up until the time of my incarceration." Father testified that if he is released from prison, it would take "a significant amount of time to develop a relationship" with the child; and he does not know how long it would take him to develop a safe and stable home for her. Mr. and Ms. M. testified that Father threatened to take Elizabeth from them and threatened their lives.[12] Taken together, Father's history and inability to rehabilitate outside of a controlled environment would render him unable to care for the child in a safe and stable manner.

Petitioners are the only parents that Elizabeth has known and have taken care of all of her needs, including weaning her from the drugs which were in her system at birth; they are aware that, as she grows, Elizabeth may have other needs as a result of those drugs. The evidence is clear that taking her from the only stability and loving family she has known

---

whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

[12] Father denies threatening Mr. and Ms. M., and stated that he has taken anger management classes while in prison.

would be detrimental to her emotional, mental, and physical health and well-being. Father has no meaningful relationship with Elizabeth and, in light of his situation at the time of trial, his ability to develop any such relationship was uncertain.

The evidence clearly and convincingly supports the trial court's holding that termination of Father's parental rights is in Elizabeth's best interest.

**D. Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.

RICHARD H. DINKINS, JUDGE